IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER A. FREY,                          :
                                           :
          Plaintiff,                       :
                                           :
     v.                                    :      CIVIL ACTION NO.
                                           :      1:05-CV-1493-JOF
GAINEY TRANSPORTATION                      :
SERVICES, INC., et al.,                    :
                                           :
          Defendants.                      :

**OPINION AND ORDER**

This matter is before the court on Defendants' motion for partial summary judgment [105-1]; Defendants' motion for reconsideration [125-1]; Defendants' motion to amend answer [127-1]; and Defendants' motion for leave to file sur-sur-reply [130-1].

**I.   Procedural History and Facts**

Plaintiff, Jennifer Frey, filed suit against Defendants Emmett Rogers and Gainey Transportation on May 2, 2005, in the State Court of DeKalb County. Defendants removed the suit to this court on June 7, 2005. Plaintiff raises causes of action of negligence and negligent hiring, supervision, and retention. She also seeks punitive damages.

On November 10, 2003, Defendant Emmett Rogers, an employee of Gainey Transportation Services, Inc., was driving a tractor-trailer on Interstate 75 South near Atlanta.

Plaintiff asserts that an accident occurred when Rogers switched lanes and collided with Plaintiff's car. After the police investigated the scene, Rogers was permitted to drive from the accident to Gainey's terminal. At the time of the accident, Rogers had been employed by Gainey for approximately one week.

Rogers received his commercial driver's license in 1991 or 1992. Rogers was involved in a rear-end collision in 2000. Rogers apparently received two citations for carrying an overweight load, one in 2001 or 2002 and one in 2003. In a statement made to Plaintiff's investigator, Rogers indicated that in the late 1990s, he had been cited by the Department of Transportation for exceeding his driving hours.

At the time Gainey hired Rogers on November 4, 2003, Gainey was aware that Rogers had been cited for an overweight load. The pre-qualification interview and employment application also indicated an employment history where Rogers left several jobs after working less than a year. During the interview process, Gainey also learned that Rogers had become stuck in a ditch in September 2003. It is not clear from the record that Gainey was aware of the 2000 rear-end collision involving Rogers. Gainey gave Rogers a pre-employment road test and hired him.

Less than a week later, Rogers' bill of lading for November 10, 2003 indicates that he arrived at Continental Tire in Mt. Vernon, Illinois at 5:40 a.m. However, Rogers' driving log records that he did not go on duty until 7:00 a.m. The bill of lading also indicates that the

2

goods were brought to Mt. Vernon from Bryan, Ohio, a trip of approximately 380 miles. After leaving Illinois, Rogers traveled to Atlanta.

Plaintiff testified that the accident occurred when Rogers changed lanes and collided with her car. The only information in the record as to the cause of the accident is Rogers' testimony that he thought Plaintiff's car had passed him, and he did not see her vehicle in his blind spot when he attempted to switch lanes. Gainey terminated Rogers because of the accident.

## II.   Discussion

### A.   Motion for Reconsideration

On October 10, 2003, the court held a discovery conference on Plaintiff's motion to compel. As part of its rulings on Plaintiff's motion, the court directed Gainey to produce to Plaintiff violation statements of all its drivers from May 10, 2003 to November 10, 2003, the six-month period immediately preceding Plaintiff's accident. Because there appeared to be some question as to the ease with which these violations statements could be compiled, the court granted Gainey leave to file a motion for reconsideration after consultation with individuals in the company as to how they extract the records.

Gainey did file such a motion for reconsideration. However, Gainey's motion relates not to the difficulty of acquiring the information, but to the existence of the information at all. Gainey presented the affidavit of Laurie Sheldon, Compliance Officer for Gainey. She testified that part of her duties for the company includes auditing driver logs. *See* Sheldon

3

Aff., ¶ 3.   In 2003, Gainey personnel manually entered information from the driver logs into a computer and then ran a software program called RapidLog, which actually audited the logs. *Id.*, ¶ 4.   The logs themselves were retained for six months only.   *Id.*, ¶ 5.   The electronic RapidLog report generated from the logs was retained for six months, while the paper report was kept in storage for one year.   *Id.*, ¶¶ 7-8.   Thus, violation statements for the relevant time period do not exist.   *Id.*, ¶ 9.

Because the documents no longer exist, Plaintiff asks the court to order the production of an alternate set of violation statements from November 2004 through May 2005, records presumably Gainey still maintains in the normal course of business.   However, those violation statements will not be relevant to Plaintiff's case because they would be from a time period after her accident.   Thus, the court will not direct the production of those records, and the court GRANTS Defendants' motion for reconsideration [125-1].   The court further notes below whether such records – even if they existed – would be relevant to Plaintiff's punitive damages claim.

### B.   Motion to Amend Answer

Defendants filed a motion to amend their answer to admit responsibility for the accident but reserve the issues of proximate cause and damages.   Defendants also do not admit punitive damages or expenses of litigation pursuant to O.C.G.A. § 13-6-11.   Plaintiff has not responded to Defendants' motion indicating there is no opposition.   For good cause shown, the court GRANTS Defendants' motion to amend answer [127-1].

4

### C.      Motion for Partial Summary Judgment

Defendants filed the instant motion for partial summary judgment addressing only Plaintiff's punitive damages claim.    It is important to distinguish Plaintiff's two bases for punitive damages.    First, Plaintiff contends that she is entitled to punitive damages against Rogers for his allegedly causing the accident.    (Because Gainey has admitted respondeat superior with respect to Rogers, Gainey would be responsible for the payment of any such damages, although the assessment of punitive damages would relate only to Rogers' actions and not Gainey's.)    Second, Plaintiff contends that she is entitled to punitive damages against Gainey.    The basis for punitive damages against Gainey, however, is solely the negligent hiring/retention/supervision claim.

### 1.      Punitive Damages (Rogers)

Georgia law provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

O.C.G.A. § 51-12-5.1(b).    "Negligence, even gross negligence, is inadequate to support a punitive damage award." *See Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988).    In automobile accidents, "punitive damages are not recoverable where the driver at fault simply violated a rule of the road." *See*, *e.g.*, *Carter v. Spells*, 229 Ga. App. 441, 442 (1997).    Punitive damages, however, are available "where the collision resulted from a pattern or policy

5

of dangerous driving." *Id.* Examples of such a "pattern" or "policy" include driving history of several DUIs, excessive speed and striking vehicle twice, driving twenty miles with serious mechanical difficulties, DUI in conjunction with numerous traffic safety violations). *See id.* (gathering cases).

In *Coker v. Culter*, 208 Ga. App. 651 (1993), the plaintiff sought punitive damages against a driver in an automobile accident where it was undisputed that the driver had been speeding, there was standing water on the road and visibility was poor, drug paraphernalia was found in the back of the driver's car, and the driver's blood alcohol level one hour after the accident was 0.03 percent. *Id.* at 651-52. The court rejected the plaintiff's claims for punitive damages, holding that even though there might be evidence of gross negligence, there was not sufficient evidence to meet the level required for punitive damages. *See also Bradford v. Xerox Corporation*, 216 Ga. App. 83 (1995) (affirming grant of summary judgment on punitive damages with respect to driver's actions where evidence showed driver was speeding while reporting to his job, road was wet, and he crossed highway median and struck plaintiff's vehicle).

Here, Plaintiff seeks punitive damages against Rogers alleging that he chose to exceed his driver hours in order to make more money as a truck driver. Plaintiff also points to the fact that Rogers admitted he had been shut down by the Department of Transportation seven or eight years ago for exceeding his driving hours and he was arrested in October 2003 for

6

AO 72A
(Rev.8/82)

driving with an overweight load.   Finally, Plaintiff avers that Rogers' falsification of his

driver's log allows an inference that Rogers was fatigued at the time of the accident.

Because there is no evidence that the weight load of Rogers' truck had any relation to

the incident in question, that cannot form the basis for a punitive damages claim.

Furthermore, the court notes that the evidentiary basis for the prior excessive hours incident

is questionable.   Plaintiff cites to the transcript of a conversation her private investigator had

with Rogers over the phone.   Obviously, this is not a statement made under oath by Rogers or

a statement made in a deposition while subject to cross-examination.   Even taking that

evidence, however, the court finds that Rogers' record is less egregious than that of the

drivers in *Coker* and *Bradford*, where the court rejected punitive damages claims.

Finally, the fact that Rogers allegedly falsified his log on the day in question is not

relevant to Plaintiff's punitive damages claim against him because there is no evidence in the

record that the accident was caused by fatigue.   In Plaintiff's supplemental response to

Defendants' motion for partial summary judgment, Plaintiff asks the court to "infer" in favor

of the non-moving party that because Rogers exceeded the Department of Transportation's

hours of service rules, "he was fatigued, and this fatigue most likely contributed to the wreck."

*See* Supplemental Motion, at 11.   Plaintiff's statement is a misapprehension of the standards

for summary judgment.   Causation is an element of the negligence claim that Plaintiff

ultimately bears the burden of proving.   Defendants may move for summary judgment

asserting that Plaintiff has not proffered any evidence showing that fatigue caused the accident

that injured Plaintiff. Defendants may also argue that no reasonable jury could conclude from the information presented by Plaintiff that the accident was caused by fatigue. If Plaintiff offers no evidence on an element of her claim, then summary judgment is appropriate. The court may not "infer" from no evidence that Plaintiff can satisfy the element of causation. In this instance, Plaintiff seeks not an "inference" but rather an "assumption." This is not appropriate on a motion for summary judgment.

Plaintiff makes a similar assumption in her "sur-sur-sur reply" when she contends that the "evidence is that Rogers falsified his logs and that evidence supports an inference that he was fatigued." *See* Reply, at 3. Plaintiff has proffered no evidence at all to connect Rogers' alleged "falsifying" of his log with any alleged fatigue. In any event, even if the court were to presume that Rogers was fatigued on the day in question, Plaintiff brought forward no evidence to show that fatigue caused the accident. The only testimony in the record is Rogers' statement that he did not see Plaintiff in his blind spot as he attempted to change lanes. There are no statements from witnesses, no police report, and no other information concerning the accident from which the court could draw an inference that fatigue was responsible. As the Georgia court in *Carter* explained, punitive damages are authorized where there is evidence that a pattern or policy of dangerous driving resulted in the accident. There is no evidence of causation here.

For these reasons, the court GRANTS Defendants' motion for summary judgment as to Plaintiff's punitive damages claim against Rogers.

AO 72A
(Rev.8/82)

2.      Punitive Damages (Gainey)

In Georgia, where a party has alleged

both respondeat superior and negligent entrustment against an employer for the acts of its driver where no punitive damages are sought, we have stated that a defendant employer's admission of liability under respondeat superior establishes the liability link from the negligence of the driver . . . rendering proof of negligent entrustment unnecessary and irrelevant.

*Bartja v. National Union Fire Insurance Company of Pittsburgh*, 218 Ga. App. 815, 817

(1995).    The plaintiff in *Bartka* alleged negligence against the defendant truck driver and

negligent hiring, retention, and supervision against the truck driver's employer.   The court

granted the employer's motion for summary judgment as to the negligent hiring, retention, and

supervision. *Id.* at 815.

An exception to this general rule exists, however, where a plaintiff has a valid claim for

punitive damages against the employer based on its independent negligence in hiring and

retaining the employee or entrusting a vehicle to such employee."   *See*, *e.g.*, *Durben v.*

*American Materials, Inc.*, 232 Ga. App. 750, 751 (1998).   The court must determine, then,

whether Plaintiff can sustain a claim of punitive damages on negligent hiring, supervision, and

retention. *Id.*

The "appropriate standard of care in a negligent hiring/retention action is whether the

employer knew or should have known the employee was not suited for the particular

employment."   *Western Industries, Inc. v. Poole*, 280 Ga. App. 378, 381-82 (2006).   A

plaintiff can sustain a claim for punitive damages for negligent hiring, supervision, and

9

retention, "only by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing such violations." *Id.* at 380. Courts have granted summary judgment on punitive damages where there is evidence that the employer complied with federal regulations and investigated the background of its drivers. *See*, *e.g.*, *Bartja*, 218 Ga. App. at 818 (no punitive damages where employer complied with federal regulations and driver was qualified to drive under regulations despite fact that driver's record showed two moving violations, a citation for driving his truck into a car parked on an emergency lane, and clipping the side mirror of an oncoming van on a two-lane highway), *but compare Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826, 828 (1993) (denying summary judgment on punitive damages claim where employer failed to follow its own rules governing background checks of employee's driving record).

Here, with regard to Plaintiff's negligent hiring claim, there is no evidence in the record that Gainey failed to comply with any federal regulations or its own procedures governing background checks of employees. Gainey produced its background investigation file which evidences that Gainey contacted at least two of Plaintiff's former employers. The citations for overweight loads did not render Rogers unqualified to drive the tractor trailer. Further, the fact that Rogers may have changed jobs frequently did not put Gainey on notice of any safety violations. Gainey required Rogers to take a road test although this was not mandated by federal regulation because Rogers possessed a valid commercial driver's license.

10

There is no information in the record regarding the rear-end collision referenced by Plaintiff, and furthermore that accident occurred outside the three-year window of Rogers' November 2003 hiring.   Thus, the court finds there is no evidence from which a reasonable jury could conclude that Gainey was negligent in hiring Rogers.

The fatal flaw in the retention and supervision aspect of Plaintiff's negligence claim against Gainey is that Rogers had only worked for Gainey for one week at the time the accident occurred.   It is undisputed that under the federal regulations governing driving logs, none of Rogers' logs would have been returned to Gainey for any type of audit prior to the accident on November 10, 2003.   It is difficult to conceive of any theory under these circumstances where Gainey negligently supervised Rogers.   Gainey fired Rogers after this accident, so there is no evidence that Gainey retained Rogers in its employ after learning of problems with his driving record.

The court notes that for this same reason, the drivers' violation statements sought by Plaintiff would not be relevant to her punitive damages claim against Gainey.   As the court noted above, the relevant consideration is whether Gainey understood that this driver was not suited for the job.   Gainey had only one week in which to supervise Rogers.   There is no suggestion in the record that Gainey failed to act appropriately to supervise Rogers during that one-week period or failed to take notice of any shortcomings he exhibited during that one-week period.   Plaintiff attempts to conflate her negligent supervision claim with respect to Rogers with the question of whether Gainey appropriately supervises all of its drivers.   Had

AO 72A
(Rev.8/82)

Rogers worked for the company for any significant period of time, such an analysis might be relevant.   That is to say, it is possible that evidence that the majority of Gainey's drivers exceeded their allowable driving time might allow for an inference that Gainey was negligent in its supervision of Rogers.   However, that is not the case before the court.   Even if Plaintiff could show numerous violations by other drivers, Plaintiff would not be able to establish a causal connection between that and Gainey's alleged failure to supervise Rogers – a driver in its employ for only one week.

Perhaps recognizing this difficulty in her negligent retention claim, Plaintiff instead argues that Rogers exceeded his driving hours, the resulting fatigue caused the accident, and Gainey's negligent policies of supervision encouraged drivers to exceed their hours.   Again, Plaintiff cannot establish a causal connection here because there is no evidence that within the one week he worked at Gainey, Rogers was aware of Gainey's alleged policy of failing to enforce drivers' hours restrictions.

Nothing in Rogers' second deposition of October 30, 2006, upon which Plaintiff bases her "supplemental" response, adds any relevant additional information to the question of whether Plaintiff is entitled to punitive damages.   The purpose of the court permitting Plaintiff to take Rogers' deposition again was to determine whether he had any knowledge of Gainey's policies concerning log violations at the time of the accident.   Rogers testified that he received a handbook from Gainey and also was trained on how properly to complete a driver's log.   *See* Rogers (Second) Depo., at 5-6.   He also stated that he knew that Gainey audited

12

based on bills of lading, manifests, fuel purchases and cash advances, but not Qualcomm satellite data. *Id.* at 7.

Plaintiff's counsel then had Rogers read from Gainey's handbook in an attempt to elicit from him the fact that Gainey's disciplinary actions with respect to late deliveries differed from its discipline concerning exceeding allowable driving hours.   Plaintiff's counsel then asserts to Rogers that Gainey would take harsher action against a driver for late deliveries than it would for exceeding the hours.   This portion of the deposition, however, involves Rogers simply reading from the handbook on the day of his deposition.   It does not address at all what Rogers understood during the one week he was driving for Gainey.

The court finds that for the purposes important here – what Rogers understood at the time of the accident –  the following colloquy is the most relevant:

> Q:    But before the wreck, you knew that Gainey put a greater emphasis on timely delivery than it did on following the safety regulations, correct?
>
> MR. HORST:        Object to the form.  Subject to the objections, defendant may answer the question.
>
> A:    I don't recall if they want you to make your delivery on time or safety. I believe they like safety more than they would delivery on time.

*Id.* at 11.   The most that Plaintiff's counsel was able to elicit from Rogers is his agreement to a statement that he "knew that Gainey's decision not to use satellite data to audit logs meant it was less likely that Gainey would enforce the safety regulations." *Id.* at 13.   In the context of Plaintiff's counsel leading questions, however, Rogers' agreement is hardly conclusive.

13

Even if the court considers the entirety of that testimony, it does not indicate that Gainey

failed to enforce safety regulations, particularly when considered with Rogers' statement that

he believed the company "liked" safety more than "delivery on time" and the fact that Rogers

knew his bills of lading, cash advances, and fuel purchases would be monitored.   Plaintiff,

herself, has ably shown that such documents are capable of drawing out problems with the

driver's own log.

Further, for the reasons described above, Plaintiff has presented no evidence to show

that the accident in question was caused by his fatigue.

The court finds *J.B. Hunt Transport, Inc. v. Bentley*, 207 Ga. App. 250 (1993), to be

inapposite.   Significantly, the procedural posture of the case was before the court of appeals

after a jury verdict rendered punitive damages against both the truck driver and the trucking

company.   Furthermore, the facts in *Hunt* are far more extreme than those presented in the

instant case.   In *Hunt*, the evidence showed that the truck had been taken in for maintenance

shortly before the accident; several witnesses testified that the truck was driving very

erratically and swinging from lane to lane at least ten to twenty miles before the accident yet

the driver did not take it out of service; a Georgia Public Service Commission inspection

found one-third of logbook violations related to excessive hours driving; Hunt destroyed the

driver's log book, as well as pre-trip and post-trip inspection reports on the vehicle, after it

had initiated its own investigation; and Hunt failed to produce the driver as a witness.   Here,

in contrast, Gainey produced the driver and all records relating to the trip in question,

14

including bills of lading and the driver's log, save for the Qualcomm data, which the court has previously found, is not the sole determinative data of any factor in the accident. Further, Gainey does not operate on a "forced-dispatch" system as Hunt did, and there is no evidence in the record concerning investigations of Gainey by the Georgia Public Service Commission.

For the foregoing reasons, the court finds that Plaintiff has not proffered sufficient evidence from which a jury could conclude by clear and convincing evidence that either Rogers or Gainey acted with "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). The court GRANTS Defendants' motion for partial summary judgment as to punitive damages.

## III.   Conclusion

The court GRANTS Defendants' motion for partial summary judgment [105-1]; GRANTS Defendants' motion for reconsideration [125-1]; GRANTS Defendants' motion to amend answer [127-1]; and GRANTS Defendants' motion for leave to file sur-sur-reply [130-1].

The parties are DIRECTED to file a pretrial order on Plaintiff's remaining claims within thirty (30) days from the date of this order.

**IT IS SO ORDERED** this 14th day of December 2006.

15

AO 72A
(Rev.8/82)

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)